Good morning. The Court please. Scott Mandel representing Appellants, Flint Community Schools and the former Interim Superintendent, Larry Watkins. Your Honors, I'd like to start by acknowledging what may well be obvious to the Court. I come before you with some bad facts and I can't change those facts, but we submit that the underlying issue here is one that results in what we believe is a bad legal decision. That's why we're asking this Court to reverse the District Court. We believe that the threshold question here is whether the Individuals with Disabilities Education Act, referred to as IDEA, is the applicable act and if so, does the exhaustion mandate in IDEA apply? Here we believe and submit that IDEA is the applicable act and looking at the actual record here, I don't understand there to be any dispute that this arises out of request for educational records. No one can dispute that and that triggers IDEA. That's what IDEA is designed for and what it's all about. What the Appley MPAS argues is that somehow they're bringing this claim independently and because of that they can bypass IDEA and I think that's the real issue before this Here we have to look at the actual record itself, starting with the complaint that was filed by MPAS and looking at the actual documents that were attached to that, which are these letters. And again, there we submit there really can't be any question that MPAS was bringing this matter in the representative capacity on behalf of the parents of these children. The letters refer to that, they actually refer to the act itself, the correct act, we submit IDEA and the complaint is laced with these allegations of MPAS acting in its representative capacity. That's filled in the complaint. Paragraphs 2, 62, 72, and 84 of the complaint specifically refer to MPAS acting in its representative capacity. So in light of that, we're in a situation where they are bringing this under IDEA, it's not this independent action that MPAS is now belatedly trying to frame. And IDEA recognizes, the regulations themselves recognize that MPAS can do just that. That a parent doesn't have to go alone, a parent can have a designated representative to request these records, to go through the due process hearing under the act itself and that's exactly what MPAS did. Again, the complaint tells us that, that MPAS did file these due process complaints for four of the eight parents involved in this and was able to get the records themselves. So if IDEA applies, if it's the applicable act, the consequence of that is the exhaustion mandate of IDEA should and must apply and that's the danger of the district court's reasoning here, is it bypasses that exhaustion requirement. And page 11 of the district court's opinion and order really crystallizes the issue itself. The district court explained that because of its reading of the complaint in this case, it was not filed under IDEA and therefore the exhaustion requirement of the act is immaterial. Those are the words essentially of the district court. But that cannot be squared with this court's ruling in the Frye case. Again, this is a recent case and I know this court is aware but just to put it on the record, the United States Supreme Court on June 28 of this year granted the petition for cert in the Frye case. But as we speak, Frye is the controlling authority in this circuit on this issue. And what this court has held in Frye is that the exhaustion mandate in IDEA is required even if it is not included in the complaint itself. And Frye recognized that you can't avoid... Even though it, what is the pronoun? Even though the act itself. The complaint doesn't cite IDEA. Correct. Exactly. That's correct. So what Frye recognized, Judge Cook, is that you can't plead around IDEA. So if you want to frame a cause of action thing, well, I'm going to get past exhaustion and get into court quicker. If IDEA is otherwise triggered, if it should have been, merely because someone is pleading around it, you can't avoid the exhaustion mandate. And that's really at the heart of what we have here is that EMPAS has come up with a legal theory that is their attempt to plead around IDEA in the exhaustion mandate. And Frye, this court, has held that you cannot do that. Are there any factual scenarios in which the exhaustion requirement of IDEA would not be required? Absolutely. Yes. And again, those... And this court has recognized that. Would be if it's futile, if there's some systemic problem, the courts recognize that, and if there's some... Like the abuse and neglect area where you have to get in right away. Those are things the courts have recognized. Would be the exception itself. But EMPAS can require, request, and obtain records even without the kind of parental authority that IDEA would require under some circumstances. Correct. Under some circumstances. But they didn't do it here. That's the problem. It really can't be... I'm sorry. I should have said this at the beginning. If I can just reserve two minutes for rebuttal. I apologize. I should have done that at the beginning. But yes, EMPAS could potentially request records, and I'm not saying that... So is the effect of the order that has been put on by the district court to say it doesn't matter what the circumstances are, it doesn't matter if this is one where you, under the three federal statutes, IDEA wouldn't come into play, it doesn't matter in every circumstance regardless? You've only got three days? That, but the greatest danger of the district court ruling is the prospective relief that it gives out into the future. That's the problem with this. So you're asking are there exceptions, but this goes, according to EMPAS, and I'll challenge counsel to get up and correct me if they're taking a different position. Their position is, I know this is a preliminary injunction, but it grants the full relief in the case. Their position is this lasts forever, forever. So this district alone has to give these records under the wrong act within three days or five days, depending on which of the acts we're talking about. The only district in the country that's required to do this forever. I'm more concerned about, I'm less concerned about the forever aspect than the regardless of the actual specific circumstances surrounding any given records request. Okay, and again, we do not believe that this falls within these exceptions as far as systematic is concerned. And the reason for that, your honor, is if you're looking at the underlying action, first the records were all obtained except for one student where there was just an error with respect to the same initials. We cover that in the brief, and the student's initials were JJ. The district gave the wrong JJ's records, and just there was an error there. By the time of the hearing, all these records were indeed produced. So as far as whether it's systemic, which is really the other exception here, we do not believe the records supported a finding that this was a systemic problem. Yes, there was some history here, but they were based on particularized conditions that the district itself had remedied at the time of the hearing itself. And it wasn't that there was no policy like McQueen had recognized or practice that the district had put in place. It was the opposite. Melinda Carroll from the district testified at the hearing that the district wants to get these out quickly. It recognizes the importance of this. We don't have some policy of withholding records when they're being requested. So it doesn't fall within these exceptions. That's a danger here, is that if you look at the actual record, it doesn't fit within these exceptions, and we have reading out of existence idea supplanting it with these other three, the P&A acts that are being referred to, and that is what we believe to be the legal error. Again, idea applies, and if the district court had recognized that idea applied, it could have framed a preliminary injunction, but we wouldn't be taking out of existence what idea balances, which is before you run into court, there's a process you can go through. We want this to be collaborative and cooperative. Here, we've got one district that it's never going to be, according to this, collaborative and cooperative. It's always adversarial, and we've got three or five days, as opposed to everybody else having up to forty-five days, no matter what the circumstances are, and that's the danger, is that idea says you cannot do that, and that's, again, what . . . . . . . .  . . . . . . . . . . . . . . . . . . I'm convinced that this district court would be wrong to find that in Flint, and everyone knows there's serious budgetary problems with that district, that the court would be unfounded to say it meets the exception for systemic. . .   . . . . . . . . . . . . If that's somebody's attention, they think, there's a serious problem here. . But the disttrict is committed to and it has made these changes. The record shows that it has Security Made these changes themselves. And again, I again, if I have any rebuttal, I'd like to get in the systemic if I can. Okay. Thank you, Anderson. had May it please the court, Brad Dems on behalf of Michigan Protection and Advocacy Service. When Flint School says that MPASS has bypassed the idea by bringing its requests for records under the P&A Acts, the DD Act, the PAMI Act, and the PAIR Act, that's not the case. What MPASS is doing is using the P&A Acts, which explicitly granted the right to access the records that it's seeking, to get those records. The records were requested on MPASS's own behalf and as a representative of the parents. What Flint Schools fails to recognize is that MPASS wears two hats at the same time. It fulfills a unique role as the protection and advocacy system for Michigan. Does the three-day order apply to situations which, even though MPASS is acting as a representative for the parents, would come under the IDEA? What I'm saying, Judge Batchelor, is that MPASS is always requesting records on its own behalf to serve its unique role to investigate issues that are occurring in the district and around the state. The purpose of requesting records for MPASS is that it allows us to determine what issues are occurring in the district, not just for that student, but to recognize patterns when records requests are seen in the aggregate to determine whether there are systemic issues occurring in the district that require our attention, to set our priorities, which must be done annually, recognizing actual and imminent issues that are occurring around the state. Have you, in other parts of the state, filed requests under IDEA? As a practice, MPASS has historically requested records under the IDEA, and that's because that system has worked. It's allowed us to get records quickly from school districts, but we also have another mechanism at our disposal, which is the P&A Act. And have you ever done, is this a unique first-time effort to so-called, we'll call it plead around, as your opponent, just to concede that, you did manage to plead around IDEA here? I would dispute the fact that- Have you done it before? Well, I would dispute the characterization that we're pleading around- Of course you do. But no, this is a case of first impression. We haven't been required to utilize the P&A Acts in the past. By the unique circumstances you found in Flint of repeated thwarting of records requests, I take it? That's right. And this apparently is budgetary problems, or they're just a mess because they have no money and they probably don't have staff? That may be the case, but what we're asking for is not anything besides records that are kept in the regular course of business. And it goes beyond the ability to provide the records within any amount of time frame. We also weren't receiving any response or acknowledgement to our requests at all from Flint schools. And when Flint schools discusses exhaustion of administrative remedies under IDEA, that only comes into play when IDEA can offer the relief that's being sought. In this case, EMPAS is asking for its records requests to be responded to under the P&A Acts within three days when EMPAS makes a request. That's not something that the P&A- I'm sorry, that the IDEA can provide relief for. It's a systemic issue. Could I- Go ahead. No. So you've got these three acts that you can proceed under, and your complaint indicates that that's what you did here. And you've set forth some of the purposes that EMPAS had for seeking these records. But are the purposes parallel all along the way with IDEA in terms of seeking these records? I don't know if the purposes of EMPAS have different or additional reasons for seeking the records. I assume pretty much under IDEA, the idea is to represent a child to ensure that child gets a free, appropriate public education. But these statutes may have a broader purpose in terms of exposing these issues to the public. I don't know what it may be. I don't know if that's a clear question or not. But my understanding is that these are just three separate statutes that permit EMPAS to proceed as it did, though there may be some overlap with IDEA in terms of seeking records of these eight kids or however many other kids there are. I think it's directly on point to say that these statutes allow EMPAS to proceed in the way that it did. To answer your question regarding whether it's parallel with the purposes of the IDEA, that's not the case. EMPAS has purposes beyond assuring that students receive a free and appropriate public education. For example, EMPAS is tasked with protecting and advocating for the rights of individuals with disabilities, regardless of whether they're eligible under the IDEA. Several of our clients, including some of the exemplars mentioned in the complaint, were not eligible under the IDEA when their records were requested. EMPAS has the ability to bring claims on their behalf under the Americans with Disabilities Act, Section 504 of the Rehab Act, even state tort law claims, perhaps. And these are claims that don't run parallel with the IDEA, separate rights that are being protected by EMPAS for those students. I'll also mention that... But under the setup now, with this order in place, EMPAS would never have to proceed under IDEA. That's correct. EMPAS has the right to request records and to receive records, copies of records, within three days under the P&A Acts. However, as a practice, EMPAS provides more time to school districts and will certainly acknowledge school districts' responses requesting more time... Well, is it your position, though, that EMPAS doesn't ever have to proceed under IDEA, regardless of the reason for the records request and regardless of whether it would be covered under IDEA? And I'm talking now not just with regard to the order that's been entered with regard to the Flint schools, but I mean just in general. Our position is that EMPAS is entitled to its clients' records if they fall under the P&A Acts. You also have said, though, that EMPAS is entitled to seek these records on its own behalf, which would imply to me that that doesn't require a client. There are scenarios when EMPAS doesn't require authorization to seek records from the client whose records are being requested, and in those scenarios certainly EMPAS is entitled to receive the records under the P&A Acts. So what would ordinarily be the timeframe you would pursue in that kind of a situation? In that situation, the P&A Acts say three days, or if there is an emergency scenario or there's potential harm, immediately. So in essence, any claim that EMPAS now brings anytime you want records, you are pleading around the IDEA if it's something that is in fact covered by the IDEA? We're not attempting to plead around the IDEA, but this is a separate right of access that's granted to EMPAS under the P&A Acts. And the IDEA doesn't provide adequate remedies to EMPAS. If you look at the due process complaints that EMPAS brought, it's clear that IDEA remedies are inadequate. EMPAS attempted to resolve this issue under IDEA and found that it was inadequate because while we did receive records for the individual students for whom records were requested, that's all that the relief that due process under IDEA can provide. It doesn't offer any systemic relief. And even in cases where EMPAS- So how broadly does the record reflect that other than the records that you didn't get but now finally have gotten that seem to be an issue here, that you're simply not getting any other records anyway? I'm sorry, if you could repeat the question. Well, it seemed to me you were just saying that the three federal acts give you three days. And in general, you're not getting records from the Flint schools. Not just these records, but you're just not getting records. And so you need this order to make sure that you're getting the records no matter under what statutory authority you're seeking them. And I'm trying to figure out where in the record that is reflected, that you're not getting the records other than these records which you have now gotten. It's stated in the record that over the years leading up to the complaint, Flint's response to our records request devolved to the point where we were receiving no response at all to any of our requests. And in addition- And I'm sorry if I'm not remembering the specifics of this, but does that record show specific record requests that were not responded to in any way? Besides the eight exemplars used in the complaint, it doesn't specify the exact records request. However, there is testimony from an advocate from MPASS acknowledging that that's the case, that she hasn't been able to receive a response from Flint schools after MPASS has requested records. To Flint's point that this would always be an adversarial endeavor, that's not the case. MPASS, when it requests records, does provide for additional time historically in the eight exemplar cases in all of the records requests presented as exhibits. MPASS asks for additional time but tells the district that it won't be able to fulfill its role as the P&A system if it can't access records promptly. Flint schools provided no response to that. And we're not asking for anything outside of what's required by the P&A acts, which grant us this right to access records. Does this order permit Flint schools to provide records in some sort of prompt order that might be more than three days? Let's say 12 days, it doesn't take them that long. Eight days, whatever the amount of time might be. Let's just say they find many times that three days is just too tight a time frame. You're asking does the preliminary... Yeah, does it permit just sort of prompt delivery or presentation of these records? Sure. How is that going to get handled going forward? The preliminary injunction states that Flint schools must comply with the time frames mandated by the P&A acts and then goes on to say three days or five days. However, when it says within the time frame mandated by the P&A acts, it's referencing the fact that the P&A acts provide for additional time if the district responds and says that they don't have the ability to provide records within three days. My understanding of the record, and I could be wrong here, is that Flint schools acknowledges that it was slow or inefficient for some period of time and providing some records and some took four or five months, but that they've reorganized themselves and have somebody dedicated to moving these records requests along and are attempting to respond quickly, but it just may be that sometimes three or five days is not enough time. Yes, and we appreciate that and the P&A acts provide for that. But the district court also found that Flint did not meet its burden of showing that these acts or its failure to respond was incapable of repetition, and in part that's why it granted the request for a preliminary injunction. What will be the penalty when they miss your three days? Well, again, Judge Batchelder, the P&A acts do provide for an extension if necessary. No, I'm not talking about the statute. We have an order from the court saying you have three days, period, for every request. So what's the penalty when they miss the three days? The MPAS, again, is willing to work with the school district. Like Counsel for Flint said, we want to have a cooperative relationship with the district. We've tried to have a cooperative relationship with the district and have been thwarted in doing so. But if a records request were not responded to within three days, we wouldn't be running to the courthouse seeking sanctions against them. We'd be trying to work with them to get a response promptly. If three days passes, we would send a follow-up request, and that's consistent with our practice before the injunction of sending follow-up requests when our requests had been ignored. Anything further? No, Your Honor. Okay. Thank you. Counsel? I have one more question. May I? Have you had anybody within the school system that you feel would be cooperative, the go-to person? There is a system. It stays the day to make that clear with you and your opponent here. We like Mrs. So-and-so, and she helps a lot. And if we knew we could go there, that kind of thing. I wonder if that's something to be on the table. I appreciate the suggestion, and we do have a system in place currently. Since the injunction has issued, we've worked with the district to make it clear how we'll be requesting records. A channel. Yes, who we'll be sending the records requests to. So that's explicitly clear between the parties and has been working. We've been receiving the records successfully within three days since the injunction issued, and we've been expending far less resources in obtaining those records. Thank you. Thank you. You do have some rebuttal time. I'm not sure how much at this point. Thank you. I do appreciate the opportunity. Okay. Your Honors, the IDEA Act can offer the relief sought here, and it's set up for that and it should not be avoided, and that's really at the heart of what we're talking about. What we have, despite the language that counsel just argued, it is adversarial. We've got an order and an answer to Judge Batchelor's question, what's the penalty here? The penalty is contempt. And MPAS is now saying that we'll call, but that's not what the order says. The district is laboring under this order that says three or five days, depending on which act we're talking about, and it's even hard to understand which act's going to apply. So the district effectively has to do all this within three days. Nobody else has to do that. I pledged I would come back to systemic, and we submit it's not systemic here. We've outlined that we've only got these eight. It's more than one. I acknowledge that. But in answer to the questions, there's no other specific example on this record. We have a district that had certain conditions that it has remedied, and that's on the record as to what it did. We don't have a practice. We don't have a policy. What we have is an affliction, poverty. It's an impoverished district. It's laboring under a deficit elimination plan. It's doing the best it can. Counsel did not heed my challenge. He is saying forever, forever. And that's the danger of this order. That's why we asked it to be reviewed. What's the remedy for forever? I mean, in light of we balance it as did the district court, and we say they were up against it, and they have children at risk, right? And so what's the right answer here? The balance I submit is idea. It really sets us out. So if you at least acknowledge what I submit to be the correct answer. I take it their prior requests were through idea. They were. And they didn't produce records. Again, I can't quarrel with that. I realize that. But I'm still thinking forever is awful, and no records is pretty miserable too. They're both bad. Like I tell people, forever lasts an awful long time. So that's the danger here. If you're balancing forever, again, that is. What does this court do? Because here we are. Understood. If this court rules idea applies, idea says. No, we have to find that the district court erred in some way. Right. Or abused its discretion. Correct. And that's the legal error is the district court ignores prior, or at least is in contravention of prior. Oh, okay. So under fry, idea applies. That's the error itself. Idea says up to 45 days. Under idea, the court could say, okay, that's up to 45 days. This district, 20 days, or whatever that may be. But at least you don't read out of existence the collaborative process. So at least they have to talk to each other rather than being under the gun all the time in an adversarial position. You don't quarrel with the idea that these other three federal statutes under which counsel moved are inapplicable? I didn't think you quarreled with that. You didn't say these other acts that he received relief under don't work? They did work. Right. We tried to point out, we're not saying that, but we're saying they don't read out of existence idea. The idea is still there, and they all work together. That's the fundamental point. They all work together. Thank you, counsel. Thank you, your honors. Okay. Thank you, counsel, for your arguments today. We appreciate them. The case will be submitted.